**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD DALE HELMS, SR.,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 23-CV-2192** |
| | : | |
| **WILLIAM HAYES,** *et al.*, | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**SÁNCHEZ, C.J.**                                                               **JUNE 15, 2023**

  Currently before the Court is a Complaint filed by Plaintiff Richard Dale Helms, Sr., a prisoner incarcerated at SCI-Phoenix, raising claims based on the alleged theft of Helms's property by other inmates while Helms was recovering from a medical procedure, and an alleged cover up of that theft by prison officials.  Helms seeks to proceed *in forma pauperis*.  For the following reasons, the Court will grant Helms leave to proceed *in forma pauperis* and dismiss his Complaint.

**I.      FACTUAL ALLEGATIONS**[1]

  Helms names as Defendants the two inmates who allegedly stole his property — William Hayes and Xavier Briedenstien — and several prison officials (the "Prison Official Defendants") — Deputy Superintendent Sipple, Lieutenant Aglar, Sergeant Hamaday, Sergeant Maur, J Block Unit Manager J. Wychunis, and Correctional Officer Ross.  (Compl. at 1-3, 15.)  Helms alleges that on December 24, 2022, he was admitted to the hospital to have his right leg amputated.  (*Id.* at 12, ¶ 1.)  While he was gone, Defendant Hayes, Helms's former cellmate, remained in the cell

---

[1] The following allegations are taken from the Complaint and exhibits attached to the Complaint. The Court adopts the pagination supplied by the CM/ECF docketing system.

they shared on J Block.  (*Id.*)  Helms was released from the hospital on January 3, 2023, and was housed at that time in the infirmary instead of his old cell on J Block.   (*Id.* at 12, ¶¶ 2-3, 8.)

On January 13, 2023, Defendant Unit Manager Wychunis moved Defendant Briedenstien into Helms's old cell, and Hayes was ordered to pack up Helms's remaining property.  (*Id.* at 12, ¶¶ 3-4.)  Apparently in connection with the efforts to clear Helms's property from the cell, Defendant Correctional Officer Ross "requested [the] combination for the lock on [Helms's] locker, while [Helms] was laying in the infirmary bed."  (*Id.*)  Helms alleges that at this time, his locker contained a considerable amount of food he had purchased.[2]  (*Id.* at 12, ¶¶ 4-5.)

Defendant Hamaday allegedly attempted to open the lock on Helms's locker but was unable to do so.  (*Id.* at 12, ¶ 5.)  Accordingly, Hamaday gave Hayes and Briedenstien the combination, but they were also unable to open the lock.  (*Id.*)  Later that evening, Briedenstien broke the lock, enabling Hayes and Briedenstien to "clear[] out said locker, selling, eating, and making food for other inmates" on the block.  (*Id.* at 12, ¶ 5.)  Helms notes that the facility's policy requires a staff member to be present at all times when one inmate packs another inmate's property, and claims that "DOC Staff" failed to follow the policy in his case.  (*Id.* at 12, ¶ 3.)

On February 8, 2023, Helms was released from the infirmary and returned to a "two man cell" on J Block.  (*Id.* at 12-13, ¶ 6.)  Helms "immediately informed Sgt. Hamaday, that due to having one leg, [he] could not get in the cell, not being able to even walk with the walker, due to not enough room to move around."  (*Id.*)  Hamaday allegedly responded that there was nothing

---

[2] Attachments to the Complaint provide the inventory of food in Helms's locker at the relevant time.  (Compl. at 16; ECF No. 1-1 at 1-7.)  Grievances attached to the Complaint as exhibits reflect Helms's assertion that Hayes also stole other items of his property.  (ECF No. 1-1 at 9-10.)

she could do and that Helms should talk to Unit Manager Wynchunis.  (*Id.* at 13, ¶ 6.)  She also allegedly walked away when Helms stated that there "will be issues" if he falls.  (*Id.*)

The next day, Helms raised the issue with Defendant Mauer and Defendant Mauer found Helms a handicapped cell on H Block.  (*Id.* at 13, ¶¶ 7-8.)  Mauer apparently assisted in transferring Helms's property to the new cell, and told Helms that he was only given a "small amount of food" and that Unit Manager Wychunis threw away open bags of food found with Helms's property.  (*Id.* at 13, ¶ 9.)  Mauer allegedly told Helms that he would look for the missing property and, three days later, sent a note to Helms stating that he found "one charger, four bowls, and four bags of chips, so far."  (*Id.* at 13, ¶ 11.)  Helms asked another correctional officer to contact Mauer about the matter and overheard Mauer say that "he would call when [Helms] could come over" to retrieve the property.  (*Id.* at 13, ¶ 12.)  However, Helms never got a call or received his property.  (*Id.* at 13, ¶ 13.)

Helms later learned from Mauer that Wychunis allegedly forbade Mauer from returning the property to Helms "because it would involve them in the theft."  (*Id.* at 13-14, ¶ 13.)  When Helms attempted to grieve matters related to his missing property, his grievances were denied as untimely, which Helms alleges is unfair because he could not have timely grieved the issue in the hospital or the infirmary, where grievance forms were not available, when the relevant events occurred.  (*Id.* at 14, ¶¶ 14-18.)  Helms alleges that SCI Phoenix "needs to address [its] policy" on this issue.  (*Id.* at 14, ¶ 18.)  Grievances that Helms attached to the Complaint further reflect that he requested receipts from Defendant Lt. Aglar to evidence the stolen property but that he never received those receipts. (ECF No. 1-1 at 12-13, 15.)  The grievances also indicate that Helms sent an inmate request to Defendant Deputy Sipple seeking to "resolve the matter of [the] property that was stolen," but received no response.  (*Id.* at 15.)

Based on these allegations, Helms brings constitutional claims, pursuant to 42 U.S.C. §
1983.  (Comp. at 3.)  Helms's claims are predicated on the theft of his property by Defendants
Hayes and Briedenstien, and the alleged withholding of evidence and/or cover up of the theft by
staff at SCI-Phoenix that allegedly prevented Helms from pursuing theft charges against Hayes
and Briedenstien.[3]  (Compl. at 3, 5, 14.)  He also appears to be bringing claims based on the
grievance process.  Helms seeks compensatory and punitive damages in the amount of
$10,482.04.  (*Id.* at 5 & 14, ¶ 20.)  He also asks the Court to order the production of the receipts
showing the property and food he purchased and to direct the filing of criminal charges against
Hayes and Briedenstien.  (*Id.* at 14, ¶ 20.)

## II.    STANDARD OF REVIEW

The Court grants Helms leave to proceed *in forma pauperis* because it appears that he
incapable of paying the fees to commence this case.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii)
requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails
to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions
to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184
F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint
contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on
its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage

---

[3] Helms erroneously refers to this evidence as "exculpatory" and cites *Brady v. Maryland*, 363
U.S. 83 (1963).  (Compl. at 14, ¶ 19.)  *Brady*, which concerns the government's obligation in the
context of a criminal prosecution to disclose evidence that is exculpatory, *i.e.*, likely to absolve
the defendant of guilt, has no application here.  To the contrary, the Court understands Helms to
be alleging that evidence he needed to prove his claims about the theft of his property was not
provided to him.

[4] However, as Helms is a prisoner, he will be obligated to pay the fee in installments in
accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,'

'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that]

complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"

*Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d

768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Furthermore, the Court must dismiss any claims over which it lacks subject matter jurisdiction.

Fed. R. Civ. P. 12(h)(3).  As Helms is proceeding *pro se*, the Court construes his allegations

liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina,

Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

### A.  Section 1983 Claims Against Prison Official Defendants

Helms brings his claims pursuant to 42 U.S.C. § 1983.  "To state a claim under § 1983, a

plaintiff must allege the violation of a right secured by the Constitution and laws of the United

States, and must show that the alleged deprivation was committed by a person acting under color

of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Helms's claims against the Prison Official

Defendants relate to their role in the handling his property and addressing the theft of his

property after the fact.  Specifically, Helms's claims are based on prison officials':  (1) failure to

secure his property or follow policy in packing his property, thereby enabling other inmates to

steal it; (2) failure to return property that was found; (3) failure to produce information that

would have enabled Helms to establish that his property was stolen, which Helms also

characterizes as a cover up of the theft; and (4) denial of Helms's grievances based on the theft.

The Court addresses these claims in turn.

First, Helms's claims related to the Prison Official Defendants' alleged failures in packing his property and the failure to return his property are best characterized as due process claims.  However, "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property."  *Daniels v. Williams*, 474 U.S. 327, 328 (1986).  Furthermore, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  The prison's grievance procedure and Pennsylvania Tort Claims Act provide sufficient remedies for intentional deprivations of property by state employees.  *See Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property by state officials); *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (holding that prison grievance system provides adequate post-deprivation remedy).  Accordingly, Helms cannot state a constitutional claim based on the Prison Official Defendants' negligence or intentional misconduct in handling his property.  That is so even if the Prison Official Defendants violated the facility's policy when directing Hayes to pack Helms's property.  *See Staton v. Britton*, Civ. A. No. 11-133, 2013 WL 622607, at *4 (W.D. Pa. Jan. 25, 2013), *report and recommendation adopted,* 2013 WL 637901 (W.D. Pa. Feb. 20, 2013) ("[A] violation of internal policy does not automatically rise to the level of a Constitutional violation.").

Second, Helms cannot state a constitutional claim based on the Prison Official Defendants' failure to provide him with evidence to support putative theft charges against Hayes and Briedenstien.  A failure to investigate or an allegedly inadequate investigation into

6

potentially criminal conduct does not equate to a constitutional violation. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation."); *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) ("[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." (quotations omitted)).  Nor is there a right to the initiation of criminal charges against another. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (explaining that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (*per curiam*) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual.").  Relatedly, Helms's request for imposition of criminal charges against Hayes and Briedenstien, is not among the type of relief that the Court can direct. *See Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) ("It is well-settled that the decision whether to file criminal charges against an individual lies within the prosecutor's discretion, and private citizens do not have a constitutional right to compel criminal prosecution.") (citations omitted); *Smith v. Friel*, No. 19-943, 2019 WL 3025239, at *4 (M.D. Pa. June 4, 2019), *report and recommendation adopted*, 2019 WL 3003380 (M.D. Pa. July 10, 2019) (collecting cases and stating "courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties").  In sum, the Prison Officials Defendants' alleged failure to essentially help Helms prove his case against Hayes and Briedenstien so that he could pursue criminal charges does not impinge on any constitutional right.

Finally, to the extent Helms brings claims against the Prison Official Defendants based on the handling of his grievances or defects in the grievance process, he has not alleged a constitutional claim.  "[P]risoners do not have a constitutional right to prison grievance procedures."  *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)).  Accordingly, allegations such as those raised by Helms predicated on deficiencies in the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim.  *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

Since Helms's allegations about the Prison Official Defendants' conduct in handling his property, the loss of his property, and his grievances cannot state a constitutional claim, the Court will dismiss all of Helms's § 1983 claims against the Prison Official Defendants with prejudice.[5]

---

[5] The Complaint contains allegations against Defendant Hamaday based on Hamaday's placement of Helms in a non-handicapped cell on J Block on February 8, 2023, that could be construed to raise a claim for deliberate indifference to Helms's health and/or safety.  (Compl. at 12-13, ¶ 6.)  However, reading Helms's Complaint in its entirely, including the exhibits attached thereto and the relief sought, the Court does not understand Helms to be pursuing a separate

**B.  Section 1983 Claims Against Hayes and Briedenstien**

Helms's § 1983 claims against Hayes and Briedenstien fail because they are not state actors.  Whether a defendant is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself."  *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists:  (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).  Hayes and Briedenstien are inmates at SCI Phoenix.  They are not state actors and nothing in the Complaint provides a non-speculative, plausible basis for treating them as state actors.  Accordingly, any § 1983 claims against Hayes and Briedenstien must be dismissed.

---

claim based on this incident with Hamaday.  Rather, the Complaint makes clear that it is predicated entirely on what happened with Helms's property while he was in the hospital and infirmary and his efforts to investigate the matter, reclaim his property, and hold accountable those responsible for taking his property.  These allegations, accordingly, appear to have been included as background.  In any event, should Helms seek to pursue a separate claim against Defendant Hamaday based on his cell placement on February 8, 2023, he must file a separate lawsuit because such a claim is based on a separate events from those underlying his property-related claims.  *McKinney v. Prosecutor's Office*, Civ. A. No. 13-2553, 2014 WL 2574414, at *15 (D.N.J. June 4, 2014) (observing that "[t]he courts[] . . . have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison[.]").  The Court expresses no opinion on the merits of any claims Helms might raise.

### C.  State Law Claims

Although Helms cannot state any § 1983 claims based on the loss of his property, the Court liberally construes the Complaint to raise state tort claims under Pennsylvania law based on the loss of his property.  However, the Court lacks subject matter jurisdiction over any such claims.[6]  The only independent basis for exercising jurisdiction of these claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).

Since Helms has not alleged the parties' citizenship, the Court cannot exercise diversity jurisdiction.  Furthermore, he seeks damages in an amount far less than the jurisdictional

---

[6] Having dismissed Helms's federal claims, the Court declines to exercise supplemental jurisdiction over any state claims.

threshold.  Accordingly, the Court will dismiss Helms's state law claims for lack of jurisdiction without prejudice to him refiling those claims in state court if he chooses to do so.[7]

## IV.      CONCLUSION

For the foregoing reasons, the Court will grant Helms leave to proceed *in forma pauperis*, dismiss Helms's federal claims with prejudice and dismiss any state tort claims without prejudice to Helms pursuing those claims in state court.  Helms will not be given leave to file an amended complaint because the Court concludes that amendment would be futile.  An Order follows, which dismisses this case.

BY THE COURT:


 _/s/ Juan R. Sánchez
JUAN R. SÁNCHEZ, C.J.

---

[7] The Court expresses no opinion on the merits of any such claims.